IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**CAVALRY SPV I, LLC as assignee**
**of Capital One Bank, N.A.**

    **Plaintiff/Counterclaim-Defendant,**

v.                                      CIVIL ACTION NO. 2:16-cv-05976

**JEFF HUGHES, individually and**
**on behalf of all others similarly situated,**

    **Defendant/Counterclaim Plaintiff(s).**

## NOTICE OF REMOVAL

Cavalry SPV I, LLC, as assignee of Capital One Bank (USA), N.A. ("Cavalry"), by counsel and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, hereby removes the above-captioned action, currently pending in the Circuit Court of Kanawha County, West Virginia, to the United States District Court for the Southern District of West Virginia. In support of this Notice of Removal, Cavalry states as follows:

    1.    On April 27, 2016, Cavalry filed a "Civil Complaint" against Jeff Hughes in the Magistrate Court of Kanawha County, West Virginia for the purpose of collecting a past due credit card debt in the principal sum of $2,288.00. Mr. Hughes incurred this debt on a credit card issued by Capital One Bank (USA), N.A., which was later assigned to Cavalry. Cavalry attached various documents to the Civil Complaint in order to establish the existence and amount of the debt. One of those documents was an "Affidavit of Claim," which established, among other things, the amount of the debt.

    2.    On June 1, 2016, Mr. Hughes removed the action to the Circuit Court of Kanawha County, West Virginia. On that day, he also filed an "Answer to Complaint and Class

Counterclaim" ("Class Counterclaims"), which alleges claims on behalf of "a class consisting of consumers in the State of West Virginia who the Plaintiff sued in a collection action since May 4, 2012." (Class Counterclaims ¶ 86.) Mr. Hughes alleges the class "to be in excess of 100 consumers." (Class Counterclaims ¶ 88.)

3. Cavalry has prepared and will file a Motion to Dismiss and Realign Parties as soon as this Court provides a Civil Action No. for this case. (*See* Exhibit 1, Motion to Dismiss and Realign Parties.) Should this Court grant Cavalry's Motion to Dismiss, Cavalry will no longer maintain offensive claims against Mr. Hughes. Should this Court grant Cavalry's Motion to Realign Parties, Cavalry will no longer be a plaintiff in these proceedings.

4. Accordingly, the only claims remaining will be Mr. Hughes's claims against Cavalry. Mr. Hughes alleges that Cavalry violated multiple provisions of the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101 et seq. (the "WVCCPA") — including the unfair deceptive acts and practices provisions in Article 6 (the "UDAP") — and also alleges that Cavalry was negligent and unjustly enriched by its alleged conduct. (Class Counterclaims ¶¶ 48-84.)

5. Mr. Hughes then alleges that the requirements of Rule 23 of the West Virginia Rules of Civil Procedure are met and that this action should proceed as a class action. (Class Counterclaims ¶¶ 88-96.)

## THE REQUIREMENTS FOR REMOVAL UNDER CAFA ARE MET

6. This Court has subject matter jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. §§ 1332, 1453. Removal is proper because the suit is a class action in which a member of the class of plaintiffs is a citizen of a state different from a defendant; because the putative class comprises more than 100 members; and because the matter

in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d).

### A. Minimal diversity exists between the parties.

7. Under CAFA, the diversity of citizenship sufficient to confer original jurisdiction on the federal courts is "minimal diversity" — i.e., the parties are diverse so long as the citizenship of any one plaintiff differs from that of at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A); *Johnson v. Advance Am.*, 549 F.3d 932, 936 (4th Cir. 2008).

8. Although only minimal diversity is required for removal under CAFA, there is complete diversity between Mr. Hughes and Cavalry. Mr. Hughes alleges that he is a citizen of West Virginia. (Class Counterclaims ¶ 1.) As shown by the information on file with the West Virginia Secretary of State's Office, Cavalry is a limited liability company chartered in Delaware with its principal place of business in New York. Thus, it is a citizen, for purposes of CAFA removal, of both Delaware and New York. *See Ferrell v. Express Check Advance of SC, LLC*, 591 F.3d 698 (4th Cir. 2010) (determining that, under CAFA, limited liability company is "unincorporated association," and, therefore, citizen of state where it is organized and state where it has principal place of business).

9. Accordingly, minimal diversity of citizenship (and in fact complete diversity of citizenship) exists in this action.

### B. There are at least 100 members of the putative class.

10. In order for a federal court to have original jurisdiction over a class action pursuant to CAFA, "the number of members of all proposed plaintiff classes in the aggregate" must be 100 or greater. *See* 28 U.S.C. § 1332 (d)(5)(B).

11. Mr. Hughes alleges that the putative class is in excess of 100 members. (Class Counterclaims ¶ 88.)

12. In fact, there are more than 100 individuals who may meet the purported class definition in the Class Counterclaims. The Class Counterclaims define the purported class as "consumers in the State of West Virginia who [Cavalry] sued in a collection action since May 4, 2012." (Class Counterclaims ¶ 86.) As shown by the Affidavit of Terry Rivera, there are 433 individuals in West Virginia who may meet the definition of the purported class. (Exhibit 2, Affidavit of Terry Rivera ¶ 4.)

### C. The matter in controversy exceeds the sum of $5,000,000.

13. Under CAFA, a minimally diverse class action is removable if the amount in controversy is greater than $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of class members "shall be aggregated" to determine whether that jurisdictional minimum has been met. *See* 28 U.S.C. § 1332(d)(6); *see also Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156, 158 (4th Cir. 2010); *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 734 (4th Cir. 2009).

14. A removing party must show only that the plaintiff *could* recover more than the jurisdictional minimum, and that the minimal amount in controversy is met by a "preponderance of the evidence," based upon consideration of the totality of the circumstances. *See, e.g.*, *Lewis v. Exxon Mobil Corp.*, 348 F. Supp. 2d 932 (W.D. Tenn. 2004); *Cradle v. Monumental Life Ins. Co.*, 354 F. Supp. 2d 632, 634 (E.D. Va. 2005); *Schwenk v. Cobra Mfg. Co.*, 322 F. Supp. 2d 676, 678 (E.D. Va. 2004). Actual evidence is not required, and reasonable extrapolations from the parties' assertions will suffice. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001).

15. In this case, Mr. Hughes seeks a broad array of damages on behalf of himself and the purported class, including, but not limited to, statutory damages adjusted for inflation, statutory penalties adjusted for inflation, cancellation of all debts of the purported class members, disgorgement of all amounts paid by the members of the purported class, actual damages, punitive damages, and attorney's fees and costs. (Class Counterclaims ¶¶ 54, 61, 66, 68, 73, 78, and 84.)

16. Mr. Hughes primarily requests statutory damages adjusted for inflation and statutory penalties adjusted for inflation. The WVCCPA provides that a penalty of up to $1,000 may be awarded for each violation of the WVCCPA. However, section 46A-5-106 of the WVCCPA provides that a statutory penalty may be adjusted for inflation and changes in the Consumer Price Index ("CPI") from September 1, 2015. In September 2015, the CPI was 237.94. Adjusting the maximum recovery per alleged violation for inflation based on the Department of Labor's CPI as of May 2016, the current maximum penalty for an alleged violation would be $1,009.63 ((240.236/237.945) x $1,000).

17. Mr. Hughes appears to allege that Cavalry committed eight separate acts in contravention of the WVCCPA with respect to his account. First, Mr. Hughes alleges that Cavalry fails to set forth the amount of the original obligation, the portion thereof which constituted principal, the portion thereof which represented interest, and the dates and amount of payments thereon. (Class Counterclaims ¶¶ 10 and 21-26). Second, Mr. Hughes alleges that Cavalry sues for attorney's fees and costs. (*Id.* ¶ 11.) Third, Mr. Hughes alleges that Cavalry attaches boilerplate affidavits to its complaints. (*Id.* ¶¶ 12-17 and 35-45.) Fourth, Mr. Hughes alleges that Cavalry engages in confusing and harassing litigation practices. (*Id.* ¶¶ 18-19.) Fifth, Mr. Hughes also alleges that Cavalry uses aggressive lawsuit practices. (*Id.* ¶¶ 20, 45.)

Sixth, Mr. Hughes alleges that Cavalry misrepresents that the debt it seeks to collect is a "credit card" debt." (*Id.* ¶¶ 27-28.) Seventh, Mr. Hughes alleges that Cavalry fails to attach the actual agreement reflecting purchase of the consumer's debt. (*Id.* ¶¶ 29-33.) Finally, Mr. Hughes alleges that Cavalry seeks to collect debts that consumers do not owe to Cavalry. (*Id.* ¶ 46.)

18. These acts may allow Mr. Hughes to collect as much as $8,077.04 in statutory penalties for his claims brought under § 46A-5-101.

19. Mr. Hughes also asserts claims under the UDAP provision of the WVCCPA, which would permit recovery of $200 or actual damages, whichever is greater. Thus, it is possible that Mr. Hughes also may be seeking a separate statutory penalty under the UDAP provisions. In his Class Counterclaims, he alleges that he seeks both "statutory penalties" and "statutory damages" under the WVCCPA. Nonetheless, for purposes of this removal, Cavalry is presuming that Mr. Hughes only is seeking one statutory penalty per act and that the statutory penalty for the eight alleged acts is $8,077.04 under 5-101.

20. Mr. Hughes additionally alleges that each class member suffered the same harm and incurred the same damages. There are 433 potential class members, including Mr. Hughes. (*See* Exhibit 2, ¶ 4.) Thus, Mr. Hughes appears to be seeking $3,497,358.32 in statutory penalties on behalf of the class under § 46A-5-101 on this claim alone.

21. Next, Mr. Hughes appears to seek cancellation of the debts of all members of the putative class. When a plaintiff seeks a declaration from the court that a contract is null and void, the monetary value of the contract is used in the calculation of the amount in controversy. *Dixon v. Edwards*, 290 F.3d 669, 711 (4th Cir. 2002).

22. According to Cavalry, cancellation of the debts of all West Virginia consumers sued by Cavalry since May 4, 2012 would amount to $1,533,438.12. (*See* Exhibit 2, ¶ 7.) By

requesting statutory penalties and cancellation of these debts owed to Cavalry, Mr. Hughes appears to seek $5,030,796.44.

23. Notwithstanding that Mr. Hughes's requests for statutory penalties and cancellation of the purported class members' debts exceeds the threshold needed to establish jurisdiction under CAFA, Mr. Hughes also seeks actual damages and punitive damages.

24. It is difficult to precisely determine the amount of actual damages that Mr. Hughes and the alleged class may recover. In *Clements v. HSBC Auto Finance, Inc.*, the United States District Court for the Southern District of West Virginia analyzed claims for alleged debt collection violations under the WVCCPA in connection with servicing a borrower's automobile loan. *See* No. 5:09-cv-00086, 2011 WL 2976558 (S.D.W. Va. July 21, 2011). In that case, although the court found the evidence of actual stress from the calls to be minimal, it nonetheless awarded the plaintiffs $5,000 in actual damages. *Id.* at *6. In this case, Mr. Hughes alleges that he and at least 432 other members of the alleged class suffered stress. If Mr. Hughes plus each member of the class recovers at least $5,000 in actual damages, they may collectively recover at least $2,165,000.

25. Mr. Hughes also seeks punitive damages. Punitive damages are to be considered in determining the amount in controversy. *Bryant v. Wal-Mart Stores East, Inc.*, 117 F. Supp. 2d 555, 557 (S.D.W. Va. 2000). Based solely on the face of Mr. Hughes's allegations, were he to prevail, punitive damages are more than likely to be awarded and should be considered in the analysis of the amount in controversy.

26. This Court has reasoned that "'in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'" *Smith v. Res-Care*, No. 3:14-5211, 2013 WL 4546042, at *4 (S.D.W. Va. Aug. 28,

2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003)). If the purported class members were to receive punitive damages that were at least three times the amount of actual damages, that alone would establish the amount in controversy requirement for CAFA jurisdiction.

27. Thus, the amount in controversy is met without even considering Mr. Hughes's request for disgorgement of all amounts paid by the members of the purported class or his request for an award of attorney's fees and costs.

28. Mr. Hughes's request for attorney's fees, however, is further evidence that this Court has CAFA jurisdiction over the Class Counterclaims. As noted above, if attorney's fees are permitted by statute, then the amount of any attorney's fees must be included in determining the amount in controversy. Section 46A-5-104 of the WVCCPA permits the recovery of attorney's fees. Accordingly, they must be considered in determining the amount in controversy. *See Patton v. Fifth Third Bank*, No. 2:05-0790, 2006 WL 771924, at *3 (S.D.W. Va. Mar. 24, 2006) (reasoning that $25,000 was appropriate); *Dunlap v. Green Tree Servicing, LLC*, No. 2:05-0311, 2005 WL 3177881, at *6 (S.D.W. Va. Nov. 28, 2005) (reasoning that $18,000 was appropriate).

29. Further, to the extent that Mr. Hughes is seeking a separate penalty under the UDAP provisions of the WVCCPA, that is further evidence that the amount in controversy is met in this case.

30. At bottom, Mr. Hughes's request for statutory damages and penalties, cancellation of the debts of the purported class members, actual damages, punitive damages, disgorgement of all amounts paid by the members of the purported class, and attorney's fees meets (and, in fact, exceeds) the threshold for CAFA jurisdiction.

**D.     The Court should realign the parties.**

31     Assuming this Court grants Cavalry's Motion to Dismiss, Mr. Hughes will be the only party asserting offensive claims in this civil action. Accordingly, Cavalry has also filed a Motion to Realign Parties contemporaneously with this Notice of Removal. As discussed in that motion, this Court should realign the parties given that the "mainspring of the proceedings" is Mr. Hughes's attempt to recover millions of dollars on behalf of a purported class of more than 100 members, and not Cavalry's attempt to recover $2,288 solely from Mr. Hughes on a credit card debt that he owes. Federal courts exercise the authority to realign parties routinely. *See* 13E Wright, Miller & Cooper, F. Prac. & Proc. Juris. § 3607 (3d ed.). This Court should look beyond the pleadings and arrange the parties according to their true roles in the dispute. *See Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 16 n. 5 (1989).

### THE OTHER REQUIREMENTS FOR REMOVAL ARE MET

32.     This notice of removal is being filed within 30 days of June 1, 2016, the date on which Mr. Hughes served his Class Counterclaims, as required by 28 U.S.C. § 1446. Accordingly, removal is timely.

33.     In accordance with 28 U.S.C. § 1446(d), Cavalry has given contemporaneous written notice of this Notice of Removal to all adverse parties and the clerk of the Circuit Court of Kanawha County. A copy of the state court Notice of Removal is attached as Exhibit 3.

34.     As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders filed, served, and entered in this action while it was pending in state court are attached as Exhibit 4.

WHEREFORE, Cavalry SPV I, LLC respectfully removes the above-captioned action, now pending in the Circuit Court of Kanawha County, West Virginia, to the United States District Court for the Southern District of West Virginia, Charleston Division.

**CAVALRY SPV I, LLC**

**By Spilman Thomas & Battle, PLLC**

*/s/ Tai C. Shadrick*
Nicholas P. Mooney II (WV State Bar No. 7204)
Tai C. Shadrick (WV State Bar No. 12261)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East (ZIP 25301)
P.O. Box 273
Charleston, WV  25321-0273
304.340.3800 (*phone*); 304.340.3801 (*facsimile*)
nmooney@spilmanlaw.com
tshadrick@spilmanlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**CAVALRY SPV I, LLC as assignee
of Capital One Bank, N.A.**

      **Plaintiff/Counterclaim-Defendant,**

v.                                                CIVIL ACTION NO. 2:16-cv-05976

**JEFF HUGHES, individually and
on behalf of all others similarly situated,**

      **Defendant/Counterclaim Plaintiff(s).**

## CERTIFICATE OF SERVICE

      I, Tai C. Shadrick, counsel for Cavalry SPV I, LLC, hereby certify that on July 1, 2016, I electronically filed the foregoing **"Notice of Removal"** with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

            Tony N. Giatras, Esquire
            Matthew W. Stonestreet, Esquire
            The Giatras Law Firm, PLLC
            118 Capitol Street, Suite 400
            Charleston, WV 25301
            troy@thewvlawfirm.com
            matt@thewvlawfirm.com

            *Counsel for Defendant/Counterclaim Plaintiff(s)*

                                      */s/ Tai C. Shadrick*
                                  Tai C. Shadrick (WV State Bar No. 12261)